CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUL 14 2015

JULIA C. DUDLEY, CLERK
BY: /s/ H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MALCOLM MUHAMMAD,<br>    Plaintiff, | Civil Action No. 7:14-cv-00142 |
| v. | MEMORANDUM OPINION |
| R. MATHENA, et al.,<br>    Defendants. | By:  Hon. Jackson L. Kiser<br>       Senior United States District Judge |

Malcolm Muhammad, a Virginia inmate proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff names correctional officials with the Virginia Department of Corrections ("VDOC") and Red Onion State Prison ("ROSP") as defendants. Plaintiff complains that he did not receive certain issues of his subscriptions to "Prison Legal News" ("PLN"), a monthly periodical, and "Final Call," a weekly religious periodical, in timely fashion. Defendants filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition.[1] After reviewing the record, I grant Defendants' motion for summary judgment.

I.

Plaintiff is a VDOC inmate who was incarcerated at ROSP until April 2, 2014, when he was transferred to Keen Mountain Correctional Center. Pursuant to VDOC Operating Procedure ("OP") 803.2, all incoming publications are reviewed at the institutional level before they are received by inmates. If a publication is not approved at the institutional level, it is forwarded to the VDOC's Publication Review Committee ("PRC") for further review. Due to prior litigation between PLN and VDOC, however, prison staff are supposed to send any PLN issue determined to be inappropriate under OP 803.2 directly to A. David Robinson, the VDOC Chief of

---

[1] I did not authorize Plaintiff's response to the Answer pursuant to Rule 12(a)(1)(C), and Plaintiff may not amend a complaint through argument in a brief opposing summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

Operations, for review instead of to the PRC. In April 2014, Robinson issued a memorandum to all wardens, reminding them that PLN publications that are disapproved at the institutional level should be sent to him for review and not to the PRC, and a month later in May 2014, this procedure was incorporated into OP 803.2. Naturally, the administrative review process required by OP 803.2 causes some delay between when mailroom staff receives a publication and when an inmate receives it.

The publications at issue in Plaintiff's Complaint[2] were subject to initial VDOC review at the institutional level under OP 803.2. Certain issues of PLN at issue in this case were erroneously forwarded to PRC for review after they were disapproved at the institutional level, and Plaintiff received certain issues of Final Call[3] and PLN[4] in nonchronological order. Plaintiff

---

[2] The periodicals at issue are limited to those described in the Complaint and supplement. Specifically, the contested PLN monthly publications are for the months of October, November, and December 2013 and February and March 2014, the contested weekly publications for Final Call are issues from December 7, 10, 17, 24, and 31, 2013; January 14, 21, 28, 2014; February 4, 11, 18, and 25, 2014; and March 4, 2014. (Compl. ¶¶ 11-12, 25-32; Supp. (ECF No. 13) ¶ 7).

[3] Plaintiff received the issues of Final Call challenged in the Complaint at the following times:
    The December 7, 2013, issue on January 23, 2014 (Compl. ¶ 26);
    The December 10, 2013, issue on January 23, 2014 (id.);
    The December 17, 2013, issue on January 23, 2014 (id.);
    The December 24, 2013, issue on February 20, 2014 (id. at ¶ 29);
    The December 31, 2013, issue on January 23, 2014 (id. at ¶ 26);
    The January 7, 2014, issue on January 23, 2014 (Pl.'s Resp. (ECF No. 45) 15.);
    The January 14, 2014, issue on February 20, 2014 (Compl. at ¶ 29);
    The January 21, 2014, issue on February 6, 2014 (id. at ¶ 28);
    The January 28, 2014, issue on January 30, 2014 (id. at ¶ 27);
    The February 4, 2014, issue on February 6, 2014 (id. at ¶ 28);
    The February 11, 2014, issue on September 12, 2014 (Supp. (ECF No. 13) ¶ 7);
    The February 18, 2014, issue on February 20, 2014 (Compl. at ¶ 29); and
    The March 4, 2014, issue on March 20, 2014 (id. at ¶ 30).
In response to the motion for summary judgment, Plaintiff acknowledged receiving other issues of Final Call as follows:
    The October 8, 2013, issue on November 12, 2013 (Pl.'s Resp. (ECF No. 45) 15.);
    The October 15, 2013, issue on October 30, 2013 (id.);
    The October 22, 2013, issue on November 12, 2013 (id.);
    The October 29, 2013, issue on December 2, 2013 (id.);
    The November 5, 2013, issue on December 17, 2013 (id.);
    The November 12 and 19, 2013, issues on an unspecified date (id.);
    The November 26, 2013, issue on December 2, 2013 (id.); and
    The December 3, 2013, issue on December 17, 2013 (id.).

2

commenced this action to vindicate his rights under the First Amendment, the Due Process and Equal Protection clauses of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") because he believes the issues of Final Call and PLN were delayed, delivered out of order, or not delivered allegedly based on racial and religious discrimination.[5]

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

---

[4] Plaintiff received PLN's November 2013 issue on January 15, 2014, (Compl. ¶ 25) and the December 2013 issue on January 23, 2014 (id. at ¶ 26).
[5] Plaintiff had argued in the Complaint that Defendants' alleged acts or omissions violated the Eighth Amendment, but he has since withdrawn that argument. (Pl.'s Resp. (ECF No. 45) 37.)

3

## III.

As for the issues of PLN and Final Call that Plaintiff received, either out of order or delayed, Plaintiff fails to establish a violation of a federal right. The First Amendment protects inmates' rights to the free exercise of religion and contact with society via mail. See, e.g., Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Procunier v. Martinez, 416 U.S. 396, 408-09 (1974); Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006). Generally, to prevail on a violation of the First Amendment, the prisoner must show that a prison action or regulation is not reasonably related to penological interests. Turner v. Safley, 482 U.S. 78, 89-90 (1987). Factors relevant in determining the reasonableness of a prison act or regulation include (1) the connection between the act or regulation and a legitimate, neutral government purpose, (2) the existence of alternative means of exercising the right, (3) the impact accommodation of the right would have on guards, other inmates, and prison resources, and (4) the absence of ready alternatives to the act or regulation. Id. at 89-91. In applying these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). Under Turner, the inmate has the burden to disprove the validity of the prison regulation. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

In this instance, the VDOC's policy is reasonably related to a legitimate security interest. Pursuant to OP 803.2, all incoming publications are subject to review at the institutional level before they are received by inmates. If a publication is not approved, it is forwarded to officials in Richmond, Virginia, for a final determination. Even when a publication is approved, the review process necessarily causes some delay between when a publication is received in the ROSP mailroom and when it is received by the inmate. A review of all incoming publications, regardless of their political or religious affiliation, is necessary to maintain security in VDOC

4

facilities because the safety of inmates, prison staff, and the public is one of the primary functions of prison administration.[6] See Cutter v. Wilkinson, 544 U.S. 709, 725 (2005) ("[P]rison security is a compelling state interest."); Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (holding that a temporary delay in the delivery of publications resulting from prison officials' security inspection does not violate inmates' First Amendment rights because a "policy of diverting publications through the property room is reasonably related to the prison's interest in inspecting mail for contraband") (citing Sizemore v. Williford, 829 F.2d 608, 610 (7th Cir. 1987) (emphasizing that "merely alleging an isolated delay or some other relatively short-term, non content-based disruption in the delivery of inmate reading materials will not support . . . a cause of action grounded upon the First Amendment")). Consequently, the VDOC review process and its resulting delay are reasonably related to legitimate penological interests.

Plaintiff contends that he has not received PLN issues from October 2013 and March 2014. Defendants are unable to account for the whereabouts of these two issues of PLN. Despite VDOC policy to the contrary, the October 2013 issue of PLN was erroneously forwarded to PRC and not delivered to Muhammad.[7] Plaintiff further contends that he has not received "other February 2014" Final Call issues, and by process of elimination for his receipt of other issues in February in 2014, the issue to which Plaintiff may likely refer is the February 25, 2014, issue of Final Call.

Concerning both these missing issues and also the delayed issues of Final Call and PLN, Plaintiff fails to establish a violation of federal law. Allegations that prison officials

---

[6] To the extent delays in delivery can be attributed to staff failing to properly follow VDOC policies and procedures, relief is not available under § 1983. See, e.g., Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

[7] Defendants do not believe they have disapproved or denied the March 2014 issue of PLN intended for Muhammad.

5

intentionally or negligently deprived an inmate of his property while acting outside the scope of official policy or custom do not state any constitutional claim if a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in irrelevant part by Daniels v. Williams, 474 U.S. 327, 330-31 (1986). Plaintiff possesses a post-deprivation remedy under Virginia law besides the inmate grievance procedures, the Virginia Tort Claims Act ("VTCA"). See Va. Code § 8.01-195.3. "Section 1983 was intended to protect only federal rights guaranteed by federal law, and not tort claims for which there are adequate remedies under state law." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Acts of simple negligence do not afford Plaintiff relief via § 1983. Daniels, 474 U.S. at 328.

Plaintiff fails to establish that he was treated differently from similarly-situated inmates as a result of purposeful discrimination. See, e.g., Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiff further fails to establish that any delay or non-receipt of the religious periodical Final Call constituted a substantial burden, especially since Plaintiff cannot rely on his labels and conclusions to set forth that allegation and he, admittedly, received nearly all of them. See supra note 3; see, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting a plaintiff's basis for relief "requires more than labels and conclusions . . . ."); Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (defining a "substantial burden" on religious exercise as "put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forc[ing] a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." (internal quotations and citations omitted)). Even if Plaintiff had established a substantial burden, the delay and non-chronological delivery of nearly all of the issues Final

Call were a result of the administrative review of incoming mail, which serves a compelling governmental interest.

## IV.

For the foregoing reasons, I grant Defendants' motion for summary judgment.

**ENTER**: This  14th day of July, 2015.

                                             Senior United States District Judge